UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROBERT HUDSON,

              Plaintiff,                           Hon. Ellen S. Carmody

v.                                         Case No. 1:10-CV-701

JOHN E. POTTER,

              Defendant.

_____/


## OPINION

        This matter is before the Court on Defendant's Motion to Dismiss and Motion for Summary Judgment. (Dkt. #30). On November 9, 2010, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #13). For the reasons articulated below, Defendant's motion is **granted** and Plaintiff's action dismissed.


## BACKGROUND

        The following allegations are contained in Plaintiff's complaint and attachments thereto. (Dkt. #1). Plaintiff began working for the United States Postal Service in 1995 and presently works for the Postal Service as a mail handler. Plaintiff suffers from insulin-dependent diabetes which limits his ability to perform certain work-related activities. The Postal Service failed to reasonably accommodate Plaintiff's limitations in violation of the Rehabilitation Act. Plaintiff subsequently filed a complaint with Equal Employment Opportunity Commission (EEOC), after which he was subjected to unlawful

retaliation. Plaintiff was also subjected to a hostile work environment. Plaintiff's EEOC complaint was denied, after which he initiated the present action against John Potter, the United States Postmaster General. Plaintiff seeks unspecified relief. Defendant Potter now moves to dismiss Plaintiff's claims and/or for summary judgment.

## STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). As the Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a motion to dismiss will be denied only where the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 545.

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

> do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 1949-50 (internal citations omitted).

When resolving a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider the complaint and any exhibits attached thereto, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss provided such are referenced in the complaint and central to the claims therein.  *See Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008); *see also*, *Continental Identification Products, Inc. v. EnterMarket, Corp.*, 2008 WL 51610 at *1, n.1 (W.D. Mich., Jan. 2, 2008) ("an exhibit to a pleading is considered part of the pleading" and "the Court may properly consider the exhibits. . .in determining whether the complaint fail[s] to state a claim upon which relief may be granted without converting the motion to a Rule 56 motion"); *Stringfield v. Graham*, 212 Fed. Appx. 530, 535 (6th Cir. 2007) (documents "attached to and cited by" the complaint are "considered parts thereof under Federal Rule of Civil Procedure 10(c)").

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."  *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In

sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**ANALYSIS**

**I.      Rehabilitation Act**

Plaintiff alleges that the Postal Service, on four separate occasions, failed to reasonably accommodate his disability-related limitations thereby violating his rights under the Rehabilitation Act. While such claims are generally associated with the Americans with Disabilities Act (ADA), the Rehabilitation Act, not the ADA, constitutes "the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) (citing 42 U.S.C. § 12111(5)(B)(i)).  The Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability. . .shall solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . .." *Potter*, 488 F.3d at 403 (quoting 29 U.S.C. § 794(a)).

While the ADA and the Rehabilitation Act both "prohibit discrimination against the disabled," there exists a significant distinction between the two measures.  While the ADA prohibits discrimination "on the basis of disability," the Rehabilitation Act "prohibits discrimination *solely* on the basis of disability." *Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011) (citations omitted).  In other words, the Rehabilitation Act permits an employer "to make a decision *because of* a handicap if the handicap is not the sole reason for decision." *Lee*, 636 F.3d at 250 (quoting *Burns v. City of Columbus, Dep't of Public Safety*, 91 F.3d 836, 841-42 (6th Cir. 1996)).

To establish a prima facie case of disability-based discrimination under the Rehabilitation Act, Plaintiff must establish that: (1) he is an individual with a disability; (2) he is otherwise qualified to perform the job requirements, with or without reasonable accommodation; and (3) he suffered an adverse employment action "solely by reason of his handicap." *Lee*, 636 F.3d at 250 (quoting *Potter*,

488 F.3d at 403).  An adverse employment action is defined as a "materially adverse change in the terms or conditions of. . .employment because of [the] employer's conduct." *Plautz v. Potter*, 156 Fed. Appx. 812, 817 (6th Cir., Dec. 21, 2005) (quoting *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004)).  An employer makes an adverse employment decision "solely" because of an employee's disability when "the employer has no reason left to rely on to justify its decision *other* than the employee's disability." *Verkade v. United States Postal Service*, 378 Fed. Appx. 567, 578 (6th Cir., May 27, 2010) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)).

Because Plaintiff's claims are based on the theory that the Postal Service failed to reasonably accommodate his disability, Plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Hedrick v. Western Reserve Care System*, 355 F.3d 444, 457 (6th Cir. 2004).  Assuming Plaintiff makes the requisite showing, Defendant then "has the burden of persuasion to show that an accommodation would impose an undue hardship."  An employer "need not reassign a disabled employee to a position for which he is not qualified, nor is the employer required to waive legitimate, non-discriminatory employment policies or displace other employees' rights in order to accommodate a disabled employee."  Finally, "an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided." *Id.*

The Rehabilitation Act also incorporates the burden shifting framework applicable to Title VII discrimination claims. *Plautz*, 156 Fed. Appx. at 816 (citing *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001)).  Accordingly, if Plaintiff is able to establish a prima facie case of discrimination, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for its actions. *Plautz*, 156 Fed. Appx. at 816 (quoting *McDonnell Douglas Corp. v. Green*, 411

U.S. 792, 802 (1973)). If Defendant carries his burden, Plaintiff must then establish "by a preponderance of the evidence that the reasons offered by [Defendant] were a pretext for discrimination." *Plautz*, 156 Fed. Appx. at 816 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). While this framework entails shifting burdens of production, the "ultimate burden of persuasion remains at all times" with Plaintiff. *Plautz*, 156 Fed. Appx. at 816 (citing *Burdine*, 450 U.S. at 253).

1. July 17, 2007 Incident

Plaintiff alleges that on July 17, 2007, he "was not reasonably accommodated and worked outside his restrictions." Specifically, Plaintiff alleges that on the date in question he was instructed to discontinue working at one particular mail sorting machine (the "old gantry") and instead work at a different mail sorting machine (the "new gantry"). (Dkt. #1, Attachment 2 at 26). Plaintiff alleges that working at the old gantry required "a consistent amount of exercise" which helped him maintain appropriate blood sugar levels. (Dkt. #1, Attachment 2 at 26-27). On the other hand, because working at the new gantry did not require a consistent amount of exercise Plaintiff was never sure of the correct amount of insulin to take prior to his work shift. (Dkt. #1, Attachment 2 at 26-27). Plaintiff was concerned that this uncertainty would cause him to experience fluctuating blood sugars. (Dkt. #1, Attachment 2 at 26-27).

Defendant does not dispute that Plaintiff is an "individual with a disability" or that he is "qualified to perform the job requirements" of mail handler. Instead, Defendant asserts that Plaintiff cannot establish that he suffered an adverse action or that such was solely due to his disability. Defendant also argues that there exists a legitimate, nondiscriminatory reason for the actions in question.

-8-

Defendant has submitted evidence that the two machines in question (the old gantry and the new gantry) are both mail sorting machines that performed the same function. (Dkt. #34, Exhibit R). The only difference between the two machines is that the old gantry sorts "Michigan" mail whereas the new gantry sorts mail being delivered to "multiple states." *Id.* Defendant has submitted evidence that the job description of mail handler encompasses working on both the old gantry and the new gantry. (Dkt. #31, Exhibit at 15-19; Dkt. #31, Exhibit B; Dkt. #31, Exhibit E at 211-14). Plaintiff has submitted no evidence to the contrary.

As Defendant further observes, the record contains absolutely no evidence that as of July 17, 2007, Plaintiff's care providers had imposed on him any limitations that were inconsistent or incompatible with the work instructions he was given. Plaintiff, in fact, acknowledged at his deposition that as of this date his care providers had not imposed on him any such restrictions or limitations. (Dkt. #31, Exhibit A at 27-32). Thus, Plaintiff has failed to establish that he suffered an adverse action or that any adverse action he experienced was solely the result of his disability. Defendant has further established that the decision to require Plaintiff to work on the new gantry was unrelated to his disability, but was instead simply a normal requirement of Plaintiff's job as a mail handler. Plaintiff has submitted no evidence that Defendant's rationale is merely a pretext for unlawful discrimination. In fact, Plaintiff asserts in a document attached to his complaint that "I was not denied an accommodation because of my diabetes, visual limitation, or other medical conditions." (Dkt. #1, Attachment 2 at 27). Plaintiff asserts that he was not afforded an accommodation because "I am the model employee that every manager wants to be working in their area." *Id.*

Finally, Defendant has submitted evidence that the Postal Service afforded Plaintiff a reasonable accommodation for his disability. Plaintiff acknowledged at his deposition that he was

-9-

advised by his doctor to monitor his blood sugar while working.  (Dkt. #31, Exhibit A at 36-37).

Suzanne Surrell, an Occupational Health Nurse Administrator for the Postal Service, testified at

Plaintiff's EEOC hearing.  (Dkt. #31, Exhibit E).  Surrell testified that Postal Service employees are

permitted to test their blood sugar, eat, and inject insulin as needed.  *Id.* at 315.  Plaintiff testified that

he was permitted to test his blood sugar while at work.  (Dkt. #31, Exhibit A at 33-34).  Plaintiff also

acknowledged that he was permitted to eat or take insulin as needed while working.  *Id.*  Plaintiff

testified, however, that he chose not to test his blood sugar while at work, opting instead to simply take

insulin before his work shift and hope for the best.  *Id.* at 33-35.

While Plaintiff may have preferred the more predictable work regimen afforded by

assignment to the old gantry, he has submitted no evidence that such was necessary or recommended

by his care providers.  Plaintiff has likewise submitted no evidence that accommodation of his condition

by permitting him to check his blood sugar, and eat or take insulin, as needed was insufficient or

unhealthy.  In the absence of any such evidence, the Court finds that permitting Plaintiff to check his

blood sugar, and eat or take insulin, as needed constituted a reasonable accommodation.  As previously

noted, because the Postal Service afforded Plaintiff a reasonable accommodation, the fact that Plaintiff

may have preferred a different accommodation is irrelevant.  Accordingly, for the various reasons

articulated above, Defendant's motion for summary judgment is granted as to this particular claim.


2.      May 1, 2008 Incident

In January 2008, Plaintiff suffered an infection in the third toe of right foot.  (Dkt. #31,

Exhibit E at 35).  Treatment with antibiotics was unsuccessful and approximately six weeks later,

Plaintiff's toe was "partially amputated."  *Id.*

On April 22, 2008, Dan Crowell, a supervisor at the mail sorting facility at which Plaintiff worked, observed Plaintiff pushing three APC carts at once in violation of safety rules that prohibit Postal Service employees from pushing or pulling more than one cart at one time.  (Dkt. #31, Exhibit E at 127-29, 194-95).  When confronted by Crowell, Plaintiff informed Crowell that his toe was "infected and getting worse" and "may be gangrenous."  *Id.* at 129, 208-09.  Crowell instructed Plaintiff to "immediately. . .seek medical attention."  *Id.* at 129-30, 208-09.  Plaintiff immediately departed and later "filled out a slip for administrative leave."  *Id.* at 209.  Plaintiff acknowledged that Crowell's actions reflected a concern for his health and well-being.  *Id.* at 130-31.

On April 29, 2008, Dr. Shannon Wiggins authored a letter in which she reported that Plaintiff was "able to return to work" the following day subject to the following restrictions: (1) Plaintiff can work up to 8 hours a day, 5 days a week; (2) he must wear protective footwear; (3) he cannot pivot on his right foot; (4) he cannot stand for longer than 30 minutes at one time per hour; (5) he must elevate his right foot 5-10 minutes every hour; (6) Plaintiff can walk "short distances," but must avoid "continuous walking" of longer than 30 minutes; and (7) Plaintiff cannot walk the same pattern repeatedly and his walking tasks should be varied.  (Dkt. #34, Exhibit S).  Plaintiff then submitted a "request for light duty" consistent with these restrictions.  (Dkt. #34, Exhibit T).  On May 1, 2008, Plaintiff's request was denied on the ground that there did not exist any work that Plaintiff could perform consistent with the limitations prescribed by Dr. Wiggins.  *Id.*

On May 5, 2008, Dr. Anne Missavage authored a letter in which she reported that Plaintiff's "amputation site is healing satisfactorily."  (Dkt. #35, Exhibit U).  The doctor reported that Plaintiff was able to work subject to the following restrictions: (1) no prolonged standing; (2) he must have "rest breaks with leg elevation" every 1-2 hours; (3) he must wear protective footwear; (4) he must

"limit pushing loads and pivoting on right foot"; (5) his walking tasks must be varied; (6) he may walk short distances, but must avoid continuously walking for longer than 30 minutes; (7) he must avoid "continuous activity" that puts stress on his right foot.  The doctor reported that Plaintiff would be unable to "return to unlimited duties" until September 1, 2008.  *Id.*

On May 14, 2008, the Postal Service contacted Dr. Missavage to seek "clarification of [Plaintiff's] medical restrictions" because the restrictions identified in her May 5, 2008 letter "did not set firm capabilities and limitations."  (Dkt. #35, Exhibit V).  The doctor responded to the Postal Service's request on May 30, 2008.  On June 5, 2008, Plaintiff was informed that his request to perform "light duty" work was approved.  *Id.*

Plaintiff has failed to articulate the basis of this particular claim.  In his complaint, he merely asserts that he was subjected to unlawful discrimination "when on or about May 1, 2008, he was not being permitted to work."  It appears that Plaintiff is challenging the decision by the Postal Service to not allow him to return to work on May 1, 2008.

As the evidence discussed above reveals, the Postal Service did not return Plaintiff to work on May 1, 2008, because there did not exist any work that Plaintiff could perform consistent with the restrictions prescribed by Dr. Wiggins on April 29, 2008.  This determination seems reasonable given the extreme limitations identified by Dr. Wiggins.  Plaintiff has submitted no evidence calling into question the accuracy of this determination or the motivation underlying such.  Apparently in response to this determination, Plaintiff secured from Dr. Missavage a letter indicating that he was not quite as limited as Dr. Wiggins concluded.  However, given the doctor's failure to identify with any specificity the limitations to which Plaintiff was subject, the Postal Service contacted the doctor for clarification of her instructions.  After receiving the necessary clarification, Plaintiff was returned to work in a

position consistent with his doctor's instructions.  The Court fails to discern how the Postal Service's conduct subjected Plaintiff to adverse action.  Moreover, even if such is the case, Defendant has certainly established that the actions in question were motivated by a legitimate, non-discriminatory reason.  Plaintiff offers no evidence that this rationale was merely a pretext to engage in unlawful discrimination.  Accordingly, Defendant's motion for summary judgment is granted as to this particular claim.

           3.        May 30, 2008 and June 13, 2008 Incidents

In his complaint, Plaintiff asserts that he was subjected to unlawful discrimination "when on or about May 30, 2008, he became aware that he was not being paid for 80 hours of leave" and, furthermore, "when on or about June 13, 2008, he became aware that he was not being properly paid."

As discussed in the preceding section, Plaintiff was unable to work from April 22, 2008, through June 5, 2008, due to restrictions prescribed by his doctors.  It appears that Plaintiff attempted to utilize accrued annual leave during this time period to offset any loss in wages from being unable to work.  Other than asserting the conclusion that he "was not being paid for 80 hours of leave," Plaintiff has failed to assert in his complaint any facts in support of this claim or otherwise articulate the basis therefor.  Plaintiff does not allege that the Postal Service miscalculated his accrued annual leave. Plaintiff likewise does not allege that he was not properly paid for the amount of annual leave he was permitted to use during the time period in question.  Instead, Plaintiff appears to be upset that he was unable to utilize the amount of annual leave that he desired.

At Plaintiff's EEOC hearing, Richard Hansen, a supervisor at the mail processing facility where Plaintiff works, testified regarding this matter.  (Dkt. #31, Exhibit E at 304).  Hansen testified that

in May 2008, Plaintiff submitted a request to utilize 80 hours of annual leave. *Id.* at 305. However, because Plaintiff did not properly submit his request he was not able to use annual leave for the specific dates he requested. *Id.* at 305-07. Specifically, Hansen testified that Plaintiff "did not call in [which] automatically puts it into the computer system to where he would be paid." *Id.* at 306. Instead, Plaintiff "waited until the last day of the pay period to bring in a leave slip." Also, Plaintiff, who worked third shift at the time, submitted his leave slip to a second shift supervisor. Because Plaintiff failed to timely submit his annual leave request he was unable to use annual leave for the specific dates he desired. *Id.* As Hansen further testified, however, an adjustment to Plaintiff's pay was subsequently processed on June 13, 2008. *Id.* at 306-07. By this time Plaintiff had "already used four more days of annual leave." *Id.* at 307. However, Plaintiff "did not have enough annual leave to cover everything he wanted covered by annual leave." Because Plaintiff "did not want [to use] sick leave," the Postal Service "could not pay him for the full amount" he requested. Plaintiff has submitted no evidence to counter Richard Hansen's testimony on this matter.

Again, Plaintiff does not allege in his complaint that the Postal Service miscalculated his accrued annual leave nor does Plaintiff allege that he was not properly paid for the amount of annual leave he was permitted to use. Instead, Plaintiff is upset that he was unable to take the amount of annual leave he desired. As Richard Hansen testified, however, Plaintiff was permitted to use all of the annual leave which he had to that point earned. Moreover, as Hansen also testified, Plaintiff's request was not initially granted because it was improperly and untimely submitted. In short, the Court fails to discern how the Postal Service's actions subjected Plaintiff to any adverse action. Moreover, even if such is the case, Defendant has established that the Postal Service's actions were motivated by legitimate, non-

discriminatory reasons.  Plaintiff offers no evidence to the contrary.  The Court, therefore, grants Defendant's motion for summary judgment as to these particular claims.


II.        Retaliation

            Plaintiff alleges in his complaint that he filed an EEOC complaint on April 7, 2008. Plaintiff further alleges that all of the actions which form the basis of his Rehabilitation Act claims (discussed above) were undertaken in retaliation for him filing a complaint with the EEOC.  Plaintiff claims that such conduct violates his rights under Title VII of the Civil Rights Act of 1964.

            To establish a prima facie case of retaliation, Plaintiff must demonstrate that: (1) he engaged in conduct protected by Title VII; (2) Defendant was aware of the protected conduct; (3) Plaintiff was thereafter subjected to adverse employment action; and (4) there exists a causal connection between his protected conduct and the allegedly retaliatory adverse employment action.  *See Russell v. University of Toledo*, 537 F.3d 596, 608-09 (6th Cir. 2008).  If Plaintiff can establish a prima facie case, the burden of production shifts to Defendant who must articulate a legitimate, nondiscriminatory reason for its actions.  *Id.* at 609.  If Defendant does so, the burden shifts back to Plaintiff to demonstrate that Defendant's proffered rationale was merely a pretext.  Despite the shifting burden of production, Plaintiff "bears the burden of persuasion throughout the entire process."  *Id.*

            Defendant does not dispute that Plaintiff was engaged in protected conduct or that the Postal Service was aware of such.  As discussed above, Plaintiff was not subjected to any adverse action. Moreover, Defendant has established that the conduct giving rise to Plaintiff's various claims was

-15-

motivated by legitimate, non-discriminatory reasons. Plaintiff has failed to demonstrate otherwise. Accordingly, Defendant's motion for summary judgment is granted as to Plaintiff's retaliation claims.

**III.          Hostile Work Environment**

Plaintiff alleges in his complaint that the events giving rise to his Rehabilitation Act claims also constituted a hostile work environment in violation of his rights under the Rehabilitation Act.

The Rehabilitation Act "incorporates Title VII remedies," therefore, "[j]ust as in Title VII cases, a plaintiff must exhaust administrative remedies before bringing a claim under the Rehabilitation Act." *Smith v. Pallman*, 420 Fed. Appx. 208, 212-13 (3d Cir., Mar. 30, 2011). A plaintiff must satisfy two prerequisites before bringing a Title VII action in federal court. He must first timely file a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC). *See Granderson v. University of Michigan*, 211 Fed. Appx. 398, 400 (6th Cir., Dec. 12, 2006); *Harris v. Giant Eagle, Inc.*, 133 Fed. Appx. 288, 292 (6th Cir., May 27, 2005). He must then initiate his action in federal court within 90 days of receiving a right-to-sue letter from the EEOC. *See Granderson*, 211 Fed. Appx. at 400; *Harris*, 133 Fed. Appx. at 292.

On July 23, 2008, the EEOC provided Plaintiff with an Acceptance for Investigation notice. (Dkt. #35, Exhibit W). This notice informed Plaintiff that his "complaint has been accepted for investigation," but that the investigation was limited to Plaintiff's allegation of "discrimination based on Physical Disability (Diabetes)" resulting from the incidents discussed above. With respect to the scope of the EEOC's investigation, the notice expressly informed Plaintiff that if he did not agree "with the defined <u>accepted</u> issue(s)," he must "specify[] the nature of [his] disagreement [in writing] within

seven (7) calendar days." *Id.* There is no evidence that Plaintiff objected to the scope of investigation as defined by the EEOC or otherwise sought to pursue a hostile work environment claim before the EEOC. Accordingly, the Court finds that because Plaintiff has failed to properly exhaust his hostile work environment claim such must be dismissed. The Court further concludes, in the alternative, that even if Plaintiff's hostile work environment claim is found to have been properly exhausted, Defendant is entitled to summary judgment.

To establish that he was subjected to a hostile work environment, Plaintiff must establish that: (1) he was disabled; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment unreasonably interfered with his work performance; and (5) defendant either knew or should have known about the harassment and failed to take corrective measures. *Plautz*, 156 Fed. Appx. at 818. As the Supreme Court has held, however, a work environment is not hostile unless it was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

Plaintiff has failed to present evidence that he was subjected to any form of harassment or hostility. As Defendant asserts, Plaintiff is simply upset that he has not been able to dictate to the Postal Service the terms and conditions under which he will work. On the other hand, as detailed above, Defendant has submitted evidence that the Postal Service's actions were appropriate and undertaken for legitimate, non-discriminatory reasons. Plaintiff's hostile work environment claim is, therefore, dismissed for failure to exhaust administrative remedies. In the alternative, the Court finds that Defendant is entitled to summary judgment as to this claim.

## CONCLUSION

For the reasons articulated herein, <u>Defendant's Motion to Dismiss and Motion for Summary Judgment</u>, (dkt. #30), is **granted** and Plaintiff's action **dismissed**.  An Order consistent with this Opinion will enter.


Date:  December 14, 2011                                  _/s/ Ellen S. Carmody_____
                                                          ELLEN S. CARMODY
                                                          United States Magistrate Judge